UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 15-81499-CIV-MARRA

JONATHAN VANQUISE DUNN,

     Plaintiff,

vs.

CITY OF BOYNTON BEACH, FLORIDA and
CHRISTOPHER MUNRO,

     Defendants.

_____/

## OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss (DE 14; DE 15). For the following reasons, Defendant Christopher Munro's motion is denied and Defendant City of Boynton Beach's motion is granted in part.

### I. Background

Plaintiff Jonathan Vanquise Dunn borrowed tools from his friend Benjamin Schwartz to make general household repairs before vacating his apartment. (DE 1 ¶ 12.) On the afternoon that Dunn sought to return the tools, Schwartz was at a friend's home. (DE 1 ¶ 13.) Dunn started walking toward the residential neighborhood where the friend's home was located, but he did not have the exact address because Schwartz's cell phone battery died before he could tell the address to Dunn. (DE 1 ¶ 14.) Dunn knew the home was one of the first homes in the neighborhood. (DE 1 ¶ 15.)

Dunn arrived at a home that he believed was the one where Schwartz was, knocked on the door, and waited a few moments for someone to answer. (DE 1 ¶ 16.) No one answered and Dunn

1

was unable to find Schwartz or otherwise contact him. (DE 1 ¶ 17.) Dunn started to walk away from the neighborhood while carrying the tool bag he intended to return to Schwartz. (DE 1 ¶ 17.)

After walking about a quarter mile, several officers from the Boynton Beach Police Department, including Defendant Officer Christopher Munro, approached Dunn in their patrol vehicles and detained him for questioning. (DE 1 ¶ 18.) Dunn explained his presence and conduct in the area to Officer Munro. (DE 1 ¶ 19.) Officer Munro believed that Dunn was in the area to commit a burglary and arrested Dunn for possession of burglary tools and for loitering or prowling. (DE 1 ¶ 20.) Though the complaint is silent on the issue and the fact does not affect the outcome of the motions, the Court notes that the parties' briefs make clear that Dunn ultimately was not prosecuted for either offense.

Dunn sued Officer Munro in his individual capacity pursuant to 42 U.S.C. § 1983 for violating his Fourth and Fourteenth Amendment rights by arresting him without probable cause. Dunn also sued the City of Boynton Beach ("the City") for false arrest[1] under state law based on a theory of vicarious liability. Additionally, Dunn brought a claim for a declaratory judgment against both Defendants that sections 810.06 (possession of burglary tools) and 856.021 (loitering or prowling) of the Florida statutes were unconstitutionally applied to him. Officer Munro moved to dismiss the § 1983 claim and the City moved to dismiss the remaining claims.

## II. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the

---

[1] Dunn labels this claim as one for "false arrest/false imprisonment." "False arrest and false imprisonment are closely related, but false imprisonment is a broader common law tort; false arrest is only one of several methods of committing false imprisonment." *Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. Dist. Ct. App. 2010). In this case, the alleged false arrest and false imprisonment are the same cause of action and the Court refers to the claim as solely a false arrest claim.

claim" that will give the defendant fair notice of what the plaintiff's claim is and the ground on which it rests. The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation and alteration omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. The Court must accept all of the plaintiff's factual allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### III. Discussion

### A. Section 1983 Claim Against Officer Munro

Officer Munro asserts that the § 1983 claim against him should be dismissed because he is cloaked with qualified immunity. A public official performing a discretionary function enjoys qualified immunity in a civil action for damages if his or her conduct "does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The purpose of this immunity is to allow

government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Qualified immunity may be raised in a motion to dismiss. *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002).[2]

For qualified immunity to apply, the public official must first show that he or she "was acting within the scope of his or her discretionary authority." *Moore v. Pederson*, 806 F.3d 1036, 1042 (11th Cir. 2015) (en banc). The term "discretionary authority" "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Id.* (alteration in original) (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)). Here, Dunn concedes that Officer Munro was acting within the scope of his discretionary authority when he arrested Dunn. (DE 16 at 6.)

Once it is established that the governmental official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate. *Moore*, 806 F.3d at 1042. To satisfy this burden, the plaintiff must show that (1) the facts demonstrate that the governmental official violated his constitutional right and (2) the right was clearly established at the time of the government official's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court may address these inquiries in whichever order it chooses, though it is often advantageous to first determine whether a violation of the right occurred. *Id.* at 242.

## 1. Whether Officer Munro Had Probable Cause to Arrest Dunn

Turning to the first inquiry, the Court must determine whether, taking the factual allegations

---

[2] "The correct standard for reviewing a motion to dismiss in a qualified-immunity case is the same as for dismissals generally." *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008). Accordingly, the Court does not consider any of the facts Officer Munro alleges in his motion that are not contained in the complaint. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007).

4

in the complaint as true, Officer Munro violated Dunn's constitutional right. An officer may "arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* Accordingly, whether Officer Munro violated Dunn's constitutional right turns on whether probable cause existed when Officer Munro arrested Dunn. *See Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997) ("There is no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment.").[3]

Probable cause means more than bare suspicion. *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003). Probable cause to arrest exists when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. *Durruthy*, 351 F.3d at 1088.

Here, the complaint is unclear as to the facts and circumstances within Officer Munro's knowledge at the time of arrest. Specifically, the complaint does not specify whether Officer Munro merely saw Dunn walking away from the neighborhood with a tool bag or also knew that Dunn approached and left the house. Under either scenario, however, the Court concludes that Officer Dunn lacked probable cause for the arrest.

---

[3] Because Dunn's claim is based solely on his arrest, the Court expresses no opinion on the constitutionality of Officer Munro's initial stop of Dunn.

### a. Probable Cause for Loitering or Prowling

The Court first considers whether Officer Munro had probable cause to arrest Dunn for loitering or prowling. Florida's "loitering or prowling" statute provides:

> (1) It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.

> (2) Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself or herself, or manifestly endeavors to conceal himself or herself or any object. Unless flight by the person or other circumstance makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.

Fla. Stat. § 856.021. Under these provisions, the elements of the offense are: (1) the defendant loitered or prowled in a place, at a time, or in a manner not usual for law-abiding individuals; (2) such loitering and prowling were under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. *State v. Ecker*, 311 So. 2d 104, 106 (Fla. 1975).

As to the first element, none of the facts alleged in the complaint suggest that Dunn was loitering or prowling at all, let alone in a place, at a time, or in a manner not usual for law-abiding individuals. The terms "loitering" and "prowling" may be broad, but even broad terms have outer bounds. Loitering and prowling cannot be used as a "'catchall' criminal offense" when the police can "not prove anything else." *Ecker*, 311 So. 2d at 112; *see also T.L.F. v. State*, 536 So. 2d 371, 373

(Fla. Dist. Ct. App. 1988) (referring to "the dark ages when police were able to use the loitering and prowling statute as a catchall charge to arrest persons at their whim").

Based on the facts as alleged in the complaint, Dunn was not loitering or prowling even under the broadest sense of those terms. At a minimum, loitering, either innocently or criminally, involves idleness or delay. *See* Loitering, *Black's Law Dictionary* (10th ed. 2014); *Loiter*, Oxford Dictionaries, http://www.oxforddictionaries.com/us/definition/american_english/loiter (last visited Apr. 21, 2016); *Loiter*, Merriam-Webster, http://www.merriam-webster.com/dictionary/loiter (last visited April 21, 2016). Knocking on the front door of a house, waiting only a few moments, and then leaving is thus not loitering in any sense of the word. Neither is merely walking while holding a bag of tools.[4] *See City of Chicago v. Morales*, 527 U.S. 41, 61 (1999) (noting that "moving" is "activity that would not constitute loitering under any possible definition of the term"). To prowl is to "move around restlessly and stealthily." *Prowl*, Oxford Dictionaries, http://www.oxforddictionaries.com/us/definition/american_english/prowl (last visited Apr. 21, 2016); *see also Prowl*, Merriam-Webster, http://www.merriam-webster.com/dictionary/prowl (last visited April 21, 2016). There is nothing restless or stealthy about merely knocking on a door and waiting for an answer, or walking while carrying a tool bag.

Even if Dunn was loitering or prowling, there is nothing to suggest that he was doing so in a place, at a time, or in a manner not usual for law-abiding individuals. Knocking on the front door of a house in the middle of the afternoon and leaving when there is no answer is not unusual for law-abiding individuals. Indeed, the Supreme Court has consistently recognized that there is a customary implicit license that "permits the visitor to approach the home by the front path, knock promptly,

---

[4] Nothing in the complaint suggests that Dunn was walking in an aimless or indolent manner.

wait briefly to be received, and then (absent invitation to linger longer) leave." *Florida v. Jardines*, 133 S. Ct. 1409, 1415 (2013) ("Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters."). "[A]ny private citizen" may do this. *Id.* at 1416. There is a well-understood distinction between such action and "snooping about [a] front porch." *Id.* at 1416 & n.3. Similarly, walking on a public road in the middle of the afternoon is not unusual for law-abiding individuals.[5] There is nothing unusual about being a pedestrian—even when holding a tool bag.

As to the second element of the statute, Officer Munro had no reason to believe that Dunn posed a threat to public safety at the time of the arrest. "[T]he words 'under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity' mean those circumstances where peace and order are threatened or where the safety of persons or property is jeopardized." *Ecker*, 311 So. 2d at 109. The "statute only authorizes an arrest where the person loitering or prowling does so under circumstances which threaten a breach of the peace or the public safety." *Id.* at 110. In other words, the surrounding circumstances must "suggest to a reasonable man some threat and concern for the public safety." *Id.* Facts suggesting an imminent breach of the peace or immediate threat to public safety are required to justify an arrest for this offense. *See id.* at 106, 109, 111; *see also Watts v. State*, 463 So. 2d 205, 206 (Fla. 1985).

The Florida Supreme Court has provided useful examples of the statute's application. The

---

[5] The complaint states that when Dunn left the neighborhood he "began walking east on Quantum Boulevard." (DE 1 ¶ 14.) The complaint does not suggest that Dunn was illegally walking in the middle of the road, not using a sidewalk when required, or otherwise acting illegally or unusually. Thus, the Court assumes there was nothing illegal or unusual about the way Dunn was walking. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (noting that on a motion to dismiss "the allegations in the complaint are viewed in the light most favorable to the plaintiff").

statute applied to a suspect "hiding among bushes at a private dwelling at 1:20 a.m" who "jump[ed]

from the fence surrounding the dwelling and start[ed] running" when an officer arrived. *Id.* On the

other hand, the statute did not apply to a person who was observed in front of an apartment building

and could not produce proper or credible identification when asked. *Id.* at 111. The statute did not

apply in the second situation because the facts did not demonstrate a threat to public safety. *Id.*

If Officer Munro merely saw Dunn walking with a tool bag in the middle of the afternoon,

that alone could not reasonably raise suspicion of a threat to public safety. *United States v. Gordon*,

231 F.3d 750, 759 (11th Cir. 2000) ("Standing or walking in a high crime area does not, by itself,

create a reasonable concern for the safety of persons or property." (quoting *Coleman v. State*, 707

So.2d 767, 768 (Fla. Dist. Ct. App. 1998)); *Fields v. City of Omaha*, 810 F.2d 830, 835 (8th Cir.

1987) ("Walking in the middle of a street, even at night, is not a crime, nor does it lead a reasonable

person to conclude that criminal behavior will soon occur.").

Even if Officer Munro knew that previously Dunn walked up to the house in the middle of

the afternoon, knocked, and then left when there was no answer, there would be no reasonable basis

for suspecting a threat to public safety.[6] Indeed, any threat of an imminent burglary vanished when

Dunn walked *away* from the house and left the neighborhood. Leaving a home once no one answers

the door is the exact opposite of conduct suggesting an imminent burglary. Once Dunn left the house

after no one answered the door, there was no reasonable basis to believe that Dunn posed an

immediate concern for public safety. The fact that Dunn held a bag of tools, without more, does not

change the analysis. In short, there were no "specific and articulable facts which, taken together with

---

[6] Based on this conclusion, the Court need not address Dunn's argument that his conduct must have been committed in Officer Munro's presence to establish probable cause.

9

rational inferences from those facts" could "reasonably warrant a finding that a breach of the peace is imminent or the public safety is threatened." *B. A. A. v. State*, 356 So. 2d 304, 305 (Fla. 1978).

### b. Probable Cause for Possession of Burglary Tools

Officer Munro also lacked probable cause to arrest Dunn for possession of burglary tools. Section 810.06 of the Florida statutes provides: "Whoever has in his or her possession any tool, machine, or implement with intent to use the same, or allow the same to be used, to commit any burglary or trespass shall be guilty of a felony of the third degree . . . ." "The elements of possession of burglary tools are (1) the defendant had in his possession a tool, and (2) the defendant had a fully formed conscious intent that the tool would be used by him or someone else to commit a burglary." *Jones v. State*, 608 So. 2d 797, 798 (Fla. 1992).

Possession of burglary tools is an offense distinct from an attempted burglary and requires overt conduct indicating that the specific tools in the suspect's possession were used or intended to be used to commit a burglary or trespass. *Id.* at 798–99; *see also Thomas v. State*, 531 So. 2d 708, 709 (Fla. 1988) (explaining that the offense requires "not merely that the accused intended to commit a burglary or trespass while those tools were in his possession, but that the accused actually intended to use those tools to perpetrate the crime"). "The overt act necessary to prove intent need not be limited to the actual use of an item in committing the trespass or burglary, but need only manifest the specific criminal intent" to commit a burglary or trespass using the tools. *Thomas*, 531 So. 2d at 710. The purpose of the overt act requirement is to prevent "abusive or pretextual arrest of persons merely found to possess common household items." *Id.* at 709.

The complaint does not specify what tools Dunn possessed, but it suggests the tools are those that could be used to make "general household repairs." (DE 1 ¶ 12.) "Possession of a common

10

household item can be illegal when the person possessing it has used it in committing a burglary or has the intent to use it in committing a burglary." *Ferguson v. State*, 420 So. 2d 585, 587 (Fla. 1982). "As the statute provides, the unlawful tools contemplated are those intended to be used to facilitate the burglary and not things used to commit other crimes after the burglary is complete." *Calliar v. State*, 760 So. 2d 885, 887 (Fla. 1999). In other words, the tools must be "objects which actually facilitate the breaking and entering." *Green v. State*, 604 So. 2d 471, 473 (Fla. 1992) (holding that gloves are not burglary tools).

Assuming the tools in Dunn's possession could be used to facilitate breaking and entering, probable cause would exist only if Dunn engaged in some overt act that manifested a specific intent to commit a burglary or trespass using those tools. *See Thomas*, 531 So. 2d  at 709 ("Mere possession standing alone will not constitute a crime."); *see also id.* at 710 ("The only real issue is whether the actions of the accused showed he or she was preparing to use the tool to commit a burglary or trespass."). Knocking on the front door of a house in the middle of the afternoon and leaving when there is no answer is not such an overt act. As noted *supra*, Dunn's conduct of leaving the house once no one answered the door is directly inconsistent with the conduct of someone about to commit a burglary or trespass at all. Accordingly, there was no reasonable basis to infer that Dunn intended to commit a burglary or trespass using the specific tools in his possession.

Without more, Officer Munro lacked probable cause to arrest Dunn for possession of burglary tools. Nothing in the complaint suggests that after Dunn knocked on the door he took out a tool or went to the back of the house or a window.[7] He simply waited a few moments and left. It

---

[7] The Court expresses no opinion on whether such facts would establish actual or arguable probable cause. The Court highlights their absence solely to demonstrate how clear it is, based on the allegations in the complaint, that Officer Munro lacked probable cause.

is possible that an officer might believe this conduct indicated that Dunn was determining the time of day the occupants of the house were not home to perhaps commit a burglary at the same time on another day.[8] The Court need not decide whether under the facts of this case such an inference would be reasonable because such conduct still would not manifest an intent to use the specific tools in Dunn's possession to commit that later hypothetical burglary. Indeed, if Dunn was performing reconnaissance, it would be odd at that time to possess the tools intended to be used to break into the home on a *different* day.[9] Furthermore, it is not even clear that Officer Munro was aware that Dunn approached the house rather than merely saw him walking with a tool bag,[10] which of course also is not conduct manifesting an intent to use the tools to commit a burglary or trespass. Thus, Officer Munro lacked probable cause.

### 2. Whether Dunn's Rights Were Clearly Established at the Time of His Arrest

Having determined that there was no probable cause to arrest Dunn, the Court must

---

[8] Officer Munro has not even made this argument.

[9] An officer is shielded with qualified immunity so long as there was probable cause (or arguable probable cause) to arrest the plaintiff for any offense, regardless of the offense announced at the time of arrest. *Pastor*, 351 F.3d at 1090 n.6. Officer Munro does not argue that he had probable cause (or arguable probable cause) to arrest Dunn for any offense other than those announced and thus waived arguments as to other offenses for the purpose of this motion. *Jones v. Cannon*, 174 F.3d 1271, 1284 n.5 (11th Cir. 1999) (declining to address potential argument for arguable probable cause that was not raised by the officer); *Odum v. Clark*, 748 F.2d 1538, 1543 (11th Cir. 1984) (holding that defendant in section 1983 action waived argument not presented to district court). Nevertheless, the Court notes that, even if an inference that Dunn was performing reconnaissance is reasonable, it is clearly established that such conduct is mere preparation and does not constitute attempted burglary under Florida law. *James v. United States*, 550 U.S. 192, 202, 204–06 & n.4 (2007), *overruled on other grounds*, *Johnson v. United States*, 135 S. Ct. 2551 (2015); *see also Jones*, 608 So. 2d at 799.

[10] "Decisions of the Supreme Court and [the Eleventh Circuit] make it clear that what counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." *Jones*, 174 F.3d at 1283 n.4.

determine whether the violated right was clearly established at the time of the arrest.

It is not enough that the right to not be arrested absent probable cause, in a general sense, was clearly established at the time Officer Munro arrested Dunn. The Supreme Court has held "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This does not mean that "the very action in question" must have "previously been held unlawful." *Id.* Rather, it means "that in the light of pre-existing law the unlawfulness must be apparent." "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present," and the Supreme Court has held that qualified immunity applies in such cases. *Id.* at 641.

Based on these principles, the Eleventh Circuit has adopted an "arguable probable cause" standard for wrongful arrest cases.[11] *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). Under this standard, an officer is cloaked with qualified immunity from liability for an arrest lacking probable cause where "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997) (per curiam) (citation and emphasis omitted).

Either case law existing at the time of the alleged violation or specific constitutional or

---

[11] Officer Munro appears to separate the inquiries of whether he had arguable probable cause and whether Dunn's right to be free from arrest under the circumstances of this case was clearly established. This is incorrect. The inquiries are the same. *Poulakis v. Rogers*, 341 F. App'x 523, 526–27 (11th Cir. 2009). "Arguable probable cause" is merely the label the Eleventh Circuit uses for the "clearly established" inquiry in wrongful arrest cases. *Id.*

statutory provisions may clearly establish the law such that a government official can be put on notice that his actions will violate a constitutional or statutory right. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1330 (11th Cir. 2007); *Vinyard v. Wilson*, 311 F.3d 1340, 1350–51 (11th Cir. 2002). When the words of a pertinent statute or constitutional provision are relied upon in the absence of case law, they must apply with "obvious clarity." *Vinyard*, 311 F.3d at 1350. Regarding case law, the Eleventh Circuit has held that only "decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state" can clearly establish the law. *Marsh v. Butler Cty.*, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc), *abrogated on other grounds*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

"[T]he fact pattern of prior cases used to show that a right is clearly established need not be 'fundamentally similar' or even 'materially similar' to the facts alleged. Rather, 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Holmes v. Kucynda*, 321 F.3d 1069, 1078 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The relevant inquiry is whether the state of the law at the time of the alleged violation gave the official fair warning that his acts were unconstitutional. *Id.*; *see also Fils v. City of Aventura*, 647 F.3d 1272, 1292 (11th Cir. 2011) (holding that cases "need not be 'materially similar'; the precedent need only provide the Defendants with fair warning'"); *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) ("Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law.").

### a. Arguable Probable Cause for Loitering or Prowling

Based on the facts as alleged in the complaint, Officer Munro lacked even arguable probable cause to arrest Dunn for loitering or prowling for three independent reasons.

14

First, it is clear that Dunn was not even loitering or prowling under the broadest definitions of those terms. It is irrelevant that the terms loitering and prowling are broad or that in some cases it may be difficult to determine whether certain conduct is loitering or prowling because, under the facts of this case, Dunn's conduct clearly fell outside the definitions of loitering or prowling. *Cf. United States v. Petrillo*, 332 U.S. 1, 7 (1947). ("That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense.").

The Florida Supreme Court has further provided police officers with fair warning that loitering or prowling is not a "catchall" offense. *Ecker*, 311 So. 2d at 111. And, it is clearly established under Florida law that "[o]ne of the most fundamental tenets of statutory construction requires that we give statutory language its plain and ordinary meaning, unless the words are defined in the statute or by the clear intent of the legislature." *Green*, 604 So. 2d at 473. The terms "loiter" or "prowl" are not given any special definition in the criminal statute and a reasonable police officer would know that Dunn's conduct did not constitute loitering or prowling even under the broadest definitions of those terms.

Second, it is clearly established that the loitering or prowling statute applies only when the loitering or prowling at issue takes place "in a place, at a time, or in a manner not usual for law-abiding individuals." *Ecker*, 311 So. 2d at 106. It is also clearly established that Dunn's conduct of knocking on the front door of a home in the afternoon, waiting a few moments, and then leaving when no one answered was not unusual for a law-abiding individual. *Jardines*, 133 S. Ct. 1409 at 1415–16 & n.3. The same is true for Dunn's conduct of merely walking on a public road in the

afternoon.[12] *Terry v. Ohio*, 392 U.S. 1, 22–23 (1968) ("Nor is there anything suspicious about people . . . strolling up and down the street, singly or in pairs."). There is no reason, without more, that the addition of a tool bag in Dunn's hands materially alters the analysis.

Finally, it is clearly established that an *imminent* breach of the peace or *immediate* threat to public safety is required to justify an arrest for loitering or prowling. *Watts*, 463 So. 2d at 206; *Ecker*, 311 So. 2d at 106, 109, 111. As explained *supra*, Officer Munro lacked any reasonable basis to suspect that Dunn was about to commit an imminent breach of the peace or that Dunn otherwise posed an immediate threat to public safety.[13] Accordingly, Officer Munro lacked arguable probable cause to arrest Dunn for loitering or prowling.

### b. Arguable Probable Cause for Possession of Burglary Tools

Based on the facts as alleged in the complaint, Officer Munro also lacked arguable probable cause to arrest Dunn for possession of burglary tools. It is clearly established that mere possession of tools is not a crime and that an overt act indicating an intent to use the specific tools in question to facilitate a burglary or trespass is required for the statute to apply. *Jones*, 608 So. 2d 798–99; *Thomas*, 531 So. 2d  at 709–10. Indeed, it is clearly established that even possessing tools while actually intending to commit a burglary does not constitute possession of burglary tools unless coupled with an intent to actually use those tools to perpetrate the crime. *Thomas*, 531 So. 2d at 709.

---

[12] Indeed, it is clearly established that even walking in a high-crime area at night does not provide reasonable suspicion (let alone probable cause) of criminal activity. *See Gordon*, 231 F.3d at 759 (quoting *Coleman*, 707 So.2d at 768); *Levin v. State*, 449 So. 2d 288, 289 (Fla. Dist. Ct. App. 1983), *approved and adopted*, 452 So. 2d 562 (Fla. 1984).

[13] As noted *supra*, even assuming that Dunn's conduct could reasonably be inferred to be "casing," such conduct would not even amount to *attempted* burglary under Florida law, let alone an imminent threat of actual burglary. *James*, 550 U.S. at 202, 204–06 & n.4; *Jones*, 608 So. 2d at 799.

As discussed *supra*, Dunn did not engage in any overt act that would indicate an intent to use the tools in his possession to facilitate a burglary or trespass. Instead, Dunn's actions of knocking on the front door and then walking away when no one answered indicated the exact opposite of an intent to commit a burglary at all. Thus, there was not even arguable probable cause to arrest Dunn for possession of burglary tools.

Officer Munro's arguments in general are mostly conclusory, and he discusses the facts of only one possession of burglary tools case in an attempt to demonstrate that he had arguable probable cause to arrest Dunn. In *Thomas*, "the accused was identified by a confidential informant, and was arrested in a frequently burglarized neighborhood while wearing socks on his hands, carrying a screwdriver, and attempting to jump a fence and run away." 531 So. 2d at 711. The Florida Supreme Court held that the defendant's activity was an overt act from which the requisite intent for possession of burglary tools might be inferred. *Id.* Officer Munro posits that the facts of this case are analogous.

It would be difficult to find a more distinguishable set of facts. Here, under the facts alleged in the complaint, there was no identification by an informant, the neighborhood was not frequently burglarized, Dunn did not have socks on his hands (nor any other indication that he intended to conceal his fingerprints), and Dunn did not attempt to flee. Instead, Dunn obeyed the officers' orders. The only similarity between *Thomas* and this case is that Dunn was near a house and possessed tools. *Thomas* does not even arguably stand for the proposition that those facts alone could establish the necessary overt act for possession of burglary tools. Indeed, the principles laid out in *Thomas* clearly establish that such facts alone would be insufficient. *Id.* at 709 ("Mere possession standing alone will not constitute a crime."); *id.* (noting that offense requires "not merely that the accused intended to

commit a burglary or trespass while those tools were in his possession, but that the accused actually intended to use those tools to perpetrate the crime"). Thus, *Thomas* provides no support for Officer Munro's motion and in fact clearly establishes law undermining Officer Munro's position.[14] Accordingly, Officer Munro's motion is denied.

### B. State Law False Arrest Claim Against the City

The City raises two arguments as to why Dunn's claim against it for false arrest should be dismissed. First, the City argues that it is entitled to sovereign immunity. Second, the City argues that there was probable cause for the arrest. The Court addresses the City's arguments in turn.

### 1. Sovereign Immunity

Section 768.28 of the Florida statutes is Florida's waiver of sovereign immunity from tort actions. The City concedes that this waiver extends to actions against the City for false arrest based on vicarious liability. (DE 15 at 3.) Indeed, the statute provides for vicarious liability for torts of an agent of the state or any of its subdivisions. Fla. Stat. § 768.28(9)(a). An exception exists, however, where the agent's acts were "committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.* In such circumstances, the state and its subdivisions may not be held liable under state law for the acts of an agent.

Citing no authority, the City argues that Dunn's allegations that Officer Munro acted "in the

---

[14] The Court disagrees with Dunn, however, that *Thomas* stands for the proposition that Officer Munro had to consider whether the evidence known to him was inconsistent with any reasonable hypothesis of innocence. In *Thomas*, the Florida Supreme Court stated that at trial "the state must prove that the evidence is inconsistent with any reasonable hypothesis of innocence." 531 So. 2d at 710 n.2. Dunn's argument that this statement is applicable here incorrectly conflates an officer's burden of probable cause with a prosecutor's burden of proof at trial. *See Lee*, 284 F.3d at 1195.

absence of lawful authority" and "in the absence of reasonable suspicion" of criminal activity (DE 1 ¶¶ 32–33) are equivalent to an allegation that Officer Munro acted in bad faith when he arrested Dunn. This argument is unconvincing. Any arrest without probable cause is, by definition, committed in the absence of lawful authority and in the absence of reasonable suspicion of criminal activity. It does not follow that every arrest lacking probable cause is made in bad faith. *See Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1124 (Fla. Dist. Ct. App. 1987) (holding that intentional tort of false arrest "does not inherently or necessarily involve those elements [including bad faith] which would activate immunity"). Accepting the City's argument would mean that the City is immune from *any* false arrest claim, despite the City's concession that it has generally waived sovereign immunity for such claims.

Florida's waiver of sovereign immunity clearly contemplates that an agent can commit a wrongful, and even intentional, act and still lack bad faith. *Id.*; *see also Duyser by Duyser v. Sch. Bd. of Broward Cty.*, 573 So. 2d 130, 131 (Fla. Dist. Ct. App. 1991) (per curiam) ("To avoid liability, there must be conduct much more reprehensible and unacceptable than a mere intentional tort."). The reference to "bad faith" in section 768.28(9)(a) is equivalent to actual malice, which depends on subjective intent. *Btesh v. City of Maitland*, No. 6:10-CV-71-ORL-19DAB, 2011 WL 3269647, at *27 (M.D. Fla. July 29, 2011), *aff'd*, 471 F. App'x 883 (11th Cir. 2012) (per curiam). There is a sharp distinction between subjective bad faith and objective unconstitutionality. *See Anderson*, 483 U.S. at 641; *Harlow,* 457 U.S. at 818–19. Dunn's allegations against the City do not state, or even imply, that Officer Munro acted in bad faith. Accordingly, the Court rejects this ground for dismissal.

### 2. Probable Cause

The City alternatively argues that Officer Munro had probable cause for the arrest. The Court

has already rejected this argument with regard to Officer Munro's motion to dismiss. The City adds little to the arguments already made by Officer Munro, except that the City relies on additional facts not contained within in the complaint. Of course, it is elementary that the Court may not consider such extrinsic facts on a motion to dismiss for failure to state a claim. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007). Thus, the Court denies the City's motion as to this claim.

### C. Claims for Declaratory Relief Against Both Defendants

Dunn concedes his claim for declaratory relief should be dismissed for jurisdictional reasons. (DE 18 at 10.) Accordingly, the Court will dismiss this claim without prejudice. Even though only the City addressed this claim, it will be dismissed as to both Defendants given Dunn's concession.

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Officer Munro's motion to dismiss (DE 14) is **DENIED** and the City's motion to dismiss (DE 15) is **GRANTED IN PART**. Count III of Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE** as to both Defendants. The City's motion (DE 15) is otherwise **DENIED**.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 14th day of June, 2016.

KENNETH A. MARRA
United States District Judge